FILED

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

98 SEP 11  AM 9: 23

U.S. DISTRICT COURT
N.D. OF ALABAMA

VERONICA WOODS,                    }
                                   }
    **Plaintiff,**           }
                                   }
v.                                 }          CASE NO. CV 96-JEO-3358-S
                                   }
ALABAMA POWER COMPANY,             }
                                   }
    **Defendant.**           }

**ENTERED**

SEP 1 1 1998

### MEMORANDUM OPINION

Before the court is defendant's Motion for Summary Judgment and its Motion to Strike Plaintiff's Evidentiary Submission. Upon consideration of the record, the submissions of the parties and the relevant law, the undersigned is of the opinion that the Motion to Strike Plaintiff's Evidentiary Submission is due to be granted in part and denied in part and that the Motion for Summary Judgment is due to be granted.

### FACTUAL BACKGROUND

Plaintiff is a Senior General Clerk in the Chemical, Results and Regulatory Compliance department at defendant's Gorgas Steam Plant ("Gorgas Plant"). (Plaintiff's First Affidavit at 1).[1] Plaintiff alleges that defendant illegally discriminated against her because of her race in violation of 42 U.S.C. § 1981, by promoting Amy Manuel

---

[1]Exhibit 1 to Plaintiff's Evidentiary Submission in Opposition to the Defendant's Motion for Summary Judgment is comprised of two affidavits of the plaintiff, one signed on November 9, 1997 and one signed November 16, 1997. The court will refer to these affidavits as "Plaintiff's First Affidavit" and "Plaintiff's Second Affidavit," respectively.

*27*

("Manuel"), a white woman, from Senior General Clerk to Specialist B - Administrative

Support ("Administrative Assistant") in the Fuels Handling Department at Gorgas.[2]  Plaintiff

claims that she was equally or more qualified than Manuel for the job of Administrative

Assistant and had seniority over her.  Defendant claims that Manuel was not promoted, that

plaintiff was not qualified for the job and that she was not equally or more qualified than

Manuel for the job.  Plaintiff also claims that defendant subjected her to a racially hostile

work environment, although the parties have never focused on this claim or discussed it in

any detail.  Defendant also asks that the court strike certain evidence submitted by plaintiff in

opposition to the motion for summary judgment.

Plaintiff started work as a General Clerk II at the Gorgas Plant in January 1985.

(Plaintiff's First Affidavit at 1).  Her immediate supervisors then were John Mullen

("Mullen"), Ray Sundberg and Pete Peterson.  (Plaintiff's Deposition at 29-33).  She has had

no change in immediate supervisors since her hiring, except that Mona Tierce became her

supervisor in 1989 or 1990 and Mullen retired in 1995.  (*Id.*; Plaintiff's First Affidavit at 3).

Mullen was thus one of plaintiff's immediate supervisors when Manuel was made an

Administrative Assistant.  Plaintiff alleges that Mullen used racial epithets in the workplace.

(Plaintiff's First Affidavit at 3).  She complains that, after she reported Mullen to "employee

---

[2] "[T]he analysis for determining whether a defendant intentionally interfered with an
employment contract under § 1981 is the same as that employed under Title VII [42 U.S.C. §
2000e, *et seq.*]."  *Ferrill v. The Parker Group, Inc.*, 967 F. Supp. 472, 474 (N.D. Ala. 1997).
The court will therefore analyze the plaintiff's claim under the law that has developed under
Title VII.

2

concern" in 1991 or 1992, he treated her derisively.[3] (*Id.*). She also complains that he once grabbed her clothes, growled at her and blocked her way to the door, causing one of her other supervisors to call out "whoa," and that he once grabbed some meal tickets out of her hand and threw them on the floor. (*Id.*; Complaint at ¶ 7; Plaintiff's Deposition at 122, 127-30

While working at the Gorgas Plant, Plaintiff advanced to the level of Senior General Clerk in the Chemical, Results and Regulatory Compliance Department. (Plaintiff's First Affidavit at 1). Her primary job responsibility in that capacity is to operate the scales for weighing coal trucks as they arrive at the plant. (*Id.*). Those in this position are sometimes called "coal scales clerks." (Couch's Deposition at 14). Plaintiff states that her duties as a coal scale clerk also include filing, typing, reports, scheduling, timesheets, ordering materials and supplies and training other coal scales clerks. (Plaintiff's First Affidavit at 1).

Defendant states that in other departments at the Gorgas Plant, the Senior General Clerks perform more administrative and clerical duties such as payroll, time sheets, typing, data key entry and invoice work than do the coal scales clerks. (Couch's Deposition at 9-10, 14-15, 56). In March 1994, defendant changed the job description of the Senior General Clerks other than the coal scales clerk, and reclassified those clerks as Administrative Assistants in recognition of their administrative duties. (Stovall Affidavit; Couch's Deposition at 11-15). Defendant states that this reclassification was simply a job title change with no resulting increase in pay or job responsibilities. (Couch's Deposition at 11-13). The Senior

---

[3]Plaintiff does not assert a retaliation claim in this action, however.

3

General Clerks who were reclassified as Administrative Assistants are white. (Plaintiff's First Affidavit at 1-2, Plaintiff's Evidentiary Submission at Exhibit 7, Attachment I-10). Plaintiff states that Administrative Assistants have more authority, more flexible hours, less supervision, more job security and more opportunity for advancement and pay increases than do coal scales clerks. (Plaintiff's First Affidavit at 2; Plaintiff's Deposition at 74-76).

Plaintiff states that she never considered complaining after several white people became Administrative Assistants, because they were all senior to her and because "management" told her the jobs were given by seniority. (Plaintiff's First Affidavit at 1-2). When an Administrative Assistant position in the Fuels Handling Department became available in June 1995, plaintiff and all the other remaining Senior General Clerks were considered for the job. (Freeman Affidavit). Amy Manuel, a white person with less seniority than plaintiff, was chosen for the position. (Plaintiff's First Affidavit at 2).

Manuel began working as a General Clerk II at the Gorgas Plant in April 1986, over a year after plaintiff had started work as a General Clerk II. (Manuel Affidavit; Plaintiff's Plaintiff's First Affidavit at 1). Manuel advanced to a Senior General Clerk position by April 1992 and was, like plaintiff, performing the duties of a coal scales clerk when the other Senior General Clerk positions were reclassified as Administrative Assistant positions and when she was later chosen for the Administrative Assistant position at issue here. (Manuel Affidavit). Manuel states that her new position requires substantial typing or keying in of information, and that typing speed and accuracy are therefore essential in performing her duties. (*Id*.).

Plaintiff took and failed two typing tests given by the defendant, one in 1985 and

4

another in 1986. (Couch's Deposition at 18-20; Exhibits 1-2). Manuel passed the

defendant's typing test in 1986.[4] (Plaintiff's Evidentiary Submission in Opposition to the

Defendant's Motion for Summary Judgment at Exhibit 6). These scores caused the

decisionmakers to choose Manuel over plaintiff, according to Freddie Freeman, Fuels

Operation Superintendent of the Gorgas Plant ("Freeman"), because the job required

substantial typing, and the decisionmakers did not believe plaintiff would be able to handle

those responsibilities. (Freeman Affidavit).

Plaintiff states that she knows Manuel's job requires very little typing because she is

often in the Fuels Department office and talks with several of the Administrative Assistants

about it. (Plaintiff's First Affidavit at 3). She states that a 1997 survey revealed that at least

50% of the job involves scheduling, that only 10% involves typing and that other prominent

duties are doing time sheets and filing. (*Id.*).

After Manuel was chosen for the Administrative Assistant position, plaintiff asked the

Gorgas Plant manager, Bob Norman, why she was not promoted. He told plaintiff that one

of her superiors, Randy Stovall ("Stovall"), a Gorgas Plant department superintendent from

1991-93, gave negative feedback about her because she left a temporary work assignment in

his department and returned to her duties on the coal scales when she became dissatisfied

with the training she received during the assignment from another employee. (Stovall

---

[4]Plaintiff states that one of defendant's personnel employees told her that she had
passed the second test, but another told her that she had failed it. The test documents reflect
that plaintiff failed both tests. Plaintiff testified that she simply chose to believe the person
who told her that she passed the second test, and failed to investigate the actual result. "I just
left it that I had passed, and I just left it alone," she testified. (Plaintiff's Deposition at 69).

5

Affidavit; Plaintiff's First Affidavit at 3).[5]

In October 1995, after Manuel became an Administrative Assistant, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On December 23, 1996, she instituted this action.

## DISCUSSION

I.  **Motion to Strike Plaintiff's Evidentiary Submission in Opposition to Defendant's Motion for Summary Judgment**

A.  **Motion to Strike Portions of Plaintiff's Evidentiary Submission that conflict with her earlier deposition testimony**

Defendant asks the court to strike several statements in the two affidavits filed by plaintiff because they allegedly conflict with her earlier deposition testimony. A plaintiff cannot avoid summary judgment by filing a sham affidavit that creates a genuine issue of fact. *Van T. Junkins and Associates v. U.S. Industries*, 736 F.2d 656, 658-59 (11th Cir.1984). In *Junkins*, after the plaintiff had "made crystal clear in three places in the deposition" that his purchasing one of the defendant's buildings was not a condition to his becoming a dealer for the defendant, he then stated in an affidavit that the building purchase *was* a condition of getting a dealership. *Id.* at 657. The court held that the affidavit could not raise a genuine issue of fact, as the plaintiff's prior deposition testimony had demonstrated that there was no such issue of fact. *Id.* at 658-59.

---

[5]Plaintiff claims that she left the temporary work assignment because the training employee refused to properly train her. (Plaintiff's First Affidavit at 3). Plaintiff states that when she complained to Stovall, he told her that if she could not get along, she would have to return to her duties at the coal scales, so she returned to the coal scales. (*Id.*). Stovall's statement that plaintiff informed him that she would no longer participate in the training is therefore essentially correct.

    1.    **Plaintiff's statement that Freeman said Stovall was the decisionmaker**

Defendant asks the court to strike the following statement in plaintiff's affidavit:

"Freddy [sic] Freeman told me that at the meeting when they appointed her, it was not his

decision; that it was Randy Stovall who made the decision." (Plaintiff's First Affidavit at 2).

Defendant argues that this statement directly contradicts the following portions of plaintiff's

prior deposition testimony:

> Q:    Okay. Did Bob Norman select Amy for the administrative assistant's position?
>
> A:    I don't know.

(Plaintiff's Deposition at 41).

> Q:    Do you know who made the decision for Amy Manuel to be an administrative assistant?
>
> A:    No

(Plaintiff's Deposition at 64).

> Q:    And you said you didn't know who selected her or decided that she would be the administrative assistant?
>
> A:    No.

(Plaintiff's Deposition at 85).

> Q:    Okay. Aside from Mr. Norman and the meetings that we've already talked about have you spoken with anyone else about Amy Manuel being made an administrative assistant?
>
> A:    No.

(Plaintiff's Deposition at 85-86).

> Q:    And you don't know who decided or - yeah, who decided that Amy

7

Manuel would become an administrative assistant?

A:     No.

(Plaintiff's Deposition at 104).

Plaintiff clearly stated in her deposition testimony that she had not spoken with anyone about Amy Manuel being made an Administrative Assistant other than with Mr. Norman and in certain meetings discussed in the deposition. Now, in opposing the motion for summary judgment, she files an affidavit stating that Freeman actually told her who the decisionmaker was, which is inconsistent with her deposition testimony.[6] This raises a material issue of fact as to whether Freeman was a decisionmaker, as defendant asserts he was. This is not merely an inconsistency arising out of a "failure of memory or variation in a witness's testimony," which would fall outside the realm of sham affidavit testimony. *See Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir.1986). Instead, this case resembles *Junkins* in that the plaintiff gave clear answers to unambiguous questions about who she had discussed Manuel's transfer with and about her knowledge regarding the identity of the decisionmaker. Her answers revealed that there was no genuine issue of material fact about whether Freeman was a decisionmaker. Like the plaintiff in *Junkins*, plaintiff has now attempted to create such an issue of fact with an affidavit that "merely contradicts, without explanation, previously given clear testimony." *Junkins,* 736 F.2d at 657. *See also Tippens*, 805 F.2d at 953. Plaintiff's affidavit statement that Freeman told her that Stovall, not Freeman, made the decision, is

---

[6]Also, although she stated in her deposition that she did not know the identity of the decisionmaker, her affidavit statement indicates that she did have information about the identity of the decisionmaker, although she protests that she did not know with certainty who actually made the decision.

8

therefore due to be disregarded by the court as it considers defendant's motion for summary judgment.[7]

### 2. Plaintiff's statement that she did not know of a typing test requirement

Defendant argues that the following statement from plaintiff's affidavit should be struck as inconsistent with her earlier deposition testimony and her EEOC charge: "I never was aware about a typing test being needed for this job until after I didn't get the job." Defendant points to plaintiff's deposition testimony that she had taken the company typing test in order to be promoted to an administrative job. (Plaintiff's Deposition at 65-67). Defendant also points to the statement in plaintiff's charge of discrimination filed with the EEOC ("EEOC charge") that she took the typing test in order to be promoted within the company. The challenged affidavit statement does not necessarily contradict the deposition testimony or the EEOC charge, however. Plaintiff's affidavit statement is that she didn't know about a typing test requirement for the Administrative Assistant job at issue in this case, not the particular administrative job she stated in her deposition testimony that she had sought nine years earlier. (Plaintiff's Deposition at 65-67). At that time, plaintiff sought an administrative job in Bill Bunch's office. (*Id.* at 65). Defendant has not shown that plaintiff's knowledge of a typing test requirement for that job necessarily meant she knew of such a requirement for the job at issue here. Plaintiff's statement in her EEOC charge and deposition that she took the typing test to be promoted to an administrative job is therefore

---

[7]The court notes that plaintiff's testimony regarding the negative statements Bob Norman told her that Stovall made about her will be considered by the court, however. (Plaintiff's Deposition at 44, 51-58).

9

not inconsistent with her affidavit testimony. The affidavit statement is due to be considered

by the court in deciding defendant's motion for summary judgment.

### 3. Plaintiff's statement that she was told positions were granted due to seniority

Defendant argues that the following statement in plaintiff's affidavit should be struck

as inconsistent with her deposition testimony: "When all the other white people got the job,

management told [me] that it was because of seniorty [sic]." (Plaintiff's First Affidavit at 2-

3). In plaintiff's earlier deposition, she was asked about a statement in her EEOC Charge

regarding seniority as a consideration for filling Administrative Assistant positions, and

testified as follows:

> Q:   Okay. Now, looking at Defendant's Exhibit 2 again, the top of the
> second page. And you were talking about other administrative assistant
> positions and the fact that you and Amy did not get the earlier positions
> because of seniority. **How did you know that the people that were
> selected for these earlier positions were chosen based on seniority?**

> A:   Well, I knew that Mark had been there longer than I. I knew that
> Nancy Jent had been there longer than me. Sarah, I know she
> transferred from another plant. Terrah Pate was there before I was. I
> wasn't sure about Julie Hester.

(Plaintiff's Deposition at 104-05) (emphasis added).

In response to a question about how she knew seniority was the basis for choosing

Administrative Assistants, plaintiff set out the deductive process she followed in forming her

conclusion: after observing that those who became Administrative Assistants before Manuel

were or may have been senior to her and to Manuel, she concluded that Administrative

Assistant positions were given based upon seniority. This testimony is of little probative

value. It fails to create a genuine issue of material fact as to defendant's motivation for

10

rejecting plaintiff because it reveals that plaintiff is not even certain about the seniority of all

those who became Administrative Assistants before Manuel. The testimony does not reflect

who among the Administrative Assistants was most senior, or whether the most senior person

became Administrative Assistant positions were given to candidates in order of their

seniority.

Now, in her affidavit, plaintiff alleges that the statements of "management" formed

the basis for her conclusion that Administrative Assistants were chosen on the basis of

seniority. This new assertion is so contrary to plaintiff's prior deposition testimony that it is

due to be excluded under *Junkins*. It is unfathomable that plaintiff would initially explain

how she deduced the seniority basis for choosing Administrative Assistants without at least

mentioning that "management" had simply told her that seniority was the basis for choice. In

such a situation, the later affidavit statement is more than just a mere additional piece of

information overlooked by plaintiff during her deposition; it is inconsistent with her prior

testimony. Plaintiff may not use her later affidavit statement that "management" told her that

Administrative Assistant job offers were based upon seniority to create a genuine issue of

material fact where her deposition testimony revealed that there was no issue of fact with

respect to whether Administrative Assistant positions were distributed, other than in her case,

on the basis of seniority. This affidavit statement is therefore due to be disregarded by the

court as it considers defendant's motion for summary judgment.[8]

---

[8]As set forth below, the motion to strike this statement is also due to be granted on
hearsay grounds.

11

**B.** **Motion to Strike Portions of Plaintiff's Evidentiary Submission that fail to meet the requirements of Rule 56(e)**

Defendant asks the court to strike portions of plaintiff's affidavit because they fail to

meet the requirements of Rule 56 of the *Federal Rules of Civil Procedure.* Rule 56(e) states,

in pertinent part, that affidavits in support of or in opposition to a motion for summary

judgment "... shall be made on personal knowledge, shall set forth such facts as would be

admissible in evidence, and shall show affirmatively that the affiant is competent to testify to

the matters stated therein." FED. R. CIV. P. 56(e). If a supporting or opposing affidavit fails

to conform to Rule 56(e), the opposing party may move to strike the nonconforming portion

or portions. *Ali v. City of Clearwater*, 915 F. Supp. 1231, 1236 (M.D. Fla. 1996), citing

*Interfase Marketing, Inc. v. Pioneer Technologies Group, Inc.*, 1993 WL 229601, *2 (M.D.

Fla. June 23, 1993), *Barnebey v. E.F. Hutton & Co.*, 715 F.Supp. 1512, 1529 (M.D.

Fla.1989)).

**1.** **Relevance of racial comments attributed to John Mullen**

Defendant argues that the racial comments plaintiff attributes to her former

supervisor, John Mullen, should be stricken as irrelevant.[9] Rule 56(e) states that affidavits

submitted in support of or in opposition to a motion for summary judgment "shall set forth

such facts as would be admissible in evidence." Rule 402 of the *Federal Rules of Evidence*

provides that irrelevant evidence is inadmissible.

The Eleventh Circuit has found that the "[t]he biases of one who neither makes nor

---

[9]The court notes that these comments would be relevant to whether plaintiff was subjected to a racially hostile work environment. The following analysis will focus on the relevance of the comments to plaintiff's promotion claim.

influences the challenged personnel decision are not probative in an employment discrimination case." *Holifield v. Reno*, 115 F.3d 1555, 1563-64 (11ᵗʰ Cir. 1997) (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 10 (1st Cir.1990)) (citing *LaMontagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1412 (7th Cir.1984)). *See also Jett v. Drummond Co., Inc.*, 1989 WL 180683, *5 (N.D. Ala. 1989) (statements of non-decisionmaker are irrelevant to issue of defendant's discriminatory intent; no evidence that statement was connected to the intent of the person who made the decision to discharge plaintiff). Thus, if Mullen did not make or influence the decision to choose Manuel for the Administrative Assistant position, then his comments are inadmissible due to irrelevancy and are therefore due to be struck.

Defendant argues that there is no evidence that Mullen participated in the decision to choose Manuel for an Administrative Assistant position or that the alleged comments were made contemporaneously with the decision to choose Manuel for the position. Plaintiff argues that Mullen was her immediate supervisor for ten years, including the time when Manuel was chosen to be an Administrative Assistant.[10]  (Plaintiff's Deposition at 108, Plaintiff's First Affidavit at 3).   As such, she argues, Mullen was one of her foremen at the time that Manuel was chosen to be an Administrative Assistant.  She argues that he had more daily contact with her than did Freeman, who defendant alleges to be the decisionmaker, or Stovall, who apparently had some influence on the decision.  Plaintiff argues that Mullen

---

[10]Plaintiff also states that Mullen was Manuel's foreman when Manuel became an Administrative Assistant, but the court has been unable to find evidence of this assertion in the record. (Plaintiff's Brief in Opposition to the Defendant's Motion for Summary Judgment at 9).  Even if this were true, it would not change the court's conclusion.

must therefore have had some influence on the decision and that his racial comments

constitute direct evidence of defendant's discriminatory animus.

Defendant states that the decisionmaker was Freeman, who was plaintiff's supervisor

when Manuel moved to the Administrative Assistant position. Defendant has filed Freeman's

affidavit, in which he states that he "was involved in the selection of an employee to fill the

position" for which Manuel was eventually chosen. (Freeman Affidavit at ¶ 3). He also

states that

> [b]ecause the job required substantial typing, I felt we needed someone who
> had demonstrated a proficiency in typing. We considered all of the remaining
> Senior General Clerks for the position. I believe the following persons were
> Senior General Clerks at the time: Amy Manuel, Veronica Woods, Dewey
> Roberts, George Liverette and Bill Sunger. Amy Manuel was selected to
> move to the clerical position because she had passed the typing test
> administered by the Training Department, and we believed she was best
> qualified based on administrative experience and her qualification on the typing
> test.
>
> We considered Veronica Woods for the position in the Fuels Department, but
> because she had failed to pass the typing test both times that she tested, we did
> not believe that she could handle the typing responsibilities of the job.

(Freeman Affidavit at ¶¶ 3-4).

Although Freeman's affidavit indicates that other people may have participated in or

influenced the decision to choose Manuel, plaintiff has presented absolutely no evidence that

Mullen in any way participated in, influenced or affected the decision to choose Manuel for

the Administrative Assistant position.[11] Plaintiff merely speculates that he must have been

involved in the decision-making process. Because there is no evidence Mullen was involved

---

[11]As set forth above, however, plaintiff's deposition testimony indicates that Stovall
influenced the decision.

14

in the decision, the statements plaintiff attributes to Mullen are irrelevant to her claim in this case. The motion to strike evidence of the statements is therefore due to be granted.

## 2. Relevance of plaintiff's opinions on her qualifications

Defendant challenges plaintiff's affidavit statements in which she opines about her qualifications for the position to which Manuel was transferred and about those of several of her fellow employees. Defendant complains that, in her prior deposition testimony, plaintiff professed ignorance as to the qualifications of these same fellow employees and as to the requirements of the job. Defendant also complains that these opinions are due to be struck as irrelevant because only the employer's perceptions about a candidate's qualifications are relevant. As the court would expect plaintiff to consider herself qualified for the position for which she claims should have been hers, and as plaintiff's opinions about her qualifications would not be relevant to the issues in this case, the motion to strike is due to be granted with respect to plaintiff's affidavit statements, insofar as they express her mere opinions.

## 3. Hearsay statements in plaintiff's affidavits

Rule 56(e) of the *Federal Rules of Civil Procedure* provides that affidavits opposing a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Inadmissible hearsay thus cannot defeat a motion for summary judgment where there is no indication that it is reducible to a form that would be admissible at trial. *See Pritchard v. Southern Co. Services*, 92 F.3d 1130, 1135, *amended in part on rehearing*, 102 F.3d 1118 (11th Cir.1996), *cert. denied*, — U.S.— , 117 S. Ct. 2453, 138 L.Ed. 2d 211 (U.S. 1997). An affidavit submitted in connection with a

15

motion for summary judgment may contain hearsay statements that would be admissible at the trial under exceptions to the hearsay rule. *H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454-55 (2d Cir.1991).

Defendant moves to strike numerous hearsay statements in plaintiff's affidavits. Plaintiff argues that the purported hearsay statements are either not hearsay or are admissible because they constitute admissions by a party under Rule 801(d)(2)(D) of the *Federal Rules of Evidence*. Rule 801(d)(2)(D) provides that a statement is not hearsay if "[t]he statement is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship. . . ." FED. R. EVID. 801(d)(2)(D).

Defendant alleges that the following statements in plaintiff's affidavits are due to be stricken as inadmissible hearsay:

1.   "I was told by management that seniorty [sic] controlled," (Plaintiff's First Affidavit at 2);

2.   "I had been told that I passed the typing test." (Plaintiff's First Affidavit at 2);

3.   "When Amy Manuel got the job, management told [me] it was because of the typing test taken ten years ago." (Plaintiff's First Affidavit at 3); and

4.   "I . . . mix with several of the administrative assistants and they have told me that very little typing is necessary." (Plaintiff's First Affidavit and 3).

Plaintiff fails to attribute these statements to a particular individual, so the court

cannot determine whether or not they were made by an agent concerning a matter in the

16

scope of his or her authority. Although she specifies, in the fourth statement, that she received information about typing duties from administrative assistants, there is no indication who those assistants are or whether their duties are the sufficiently similar to the duties required for Manuel's position. Thus, even if they could be considered under Rule 801(d)(2)(D), there is no indication that they are relevant to plaintiff's claims. The motion to strike these statements as inadmissible hearsay is thus due to be granted.

Defendant argues that the following statement should be stricken because it is inadmissible hearsay: "Freddy [sic] Freeman told me that at the meeting when they appointed her, it was not his decision; that it was Randy Stovall who made the decision." (Plaintiff's First Affidavit, p. 2). This statement was allegedly made by Freeman, who is Fuels Operation Superintendent for the defendant. (Freeman Affidavit at 1). This statement arguably concerns a matter within the scope of his employment and is not due to be struck under Rule 801(d)(2)(D).[12]

Defendant argues that the following statements should be stricken as inadmissible hearsay: plaintiff's assertion that Manuel was promoted and plaintiff's assertions regarding the characteristics and benefits of Manuel's position. It is not clear why defendant asserts that these statements constitute inadmissible hearsay. It appears that the statements are based upon plaintiff's personal observations. She does not attribute them to anyone else. These statements are not due to be struck as inadmissible hearsay.

Defendant alleges that the following statement should be struck as inadmissible

---

[12]As is set forth above, however, this affidavit statement is due to be disregarded by the court because it is inconsistent with her prior deposition testimony.

17

hearsay: "I know that Roger Webber was [Manuel's] supervisor and he gave Manuel a poor

oral report to Freddy [sic] Freeman in 1992 or 1993, when he took over fuels after Webber

left. At that time, she had been working in fuels and, after the poor report from Webber, was

taken out of fuels and put back in scales with me. I know this because Manuel told me and

John Mullins [sic] told me that that was why Manuel was returning to scales." (Plaintiff's

Second Affidavit, p. 1).

This statement would be inadmissible hearsay because there is no indication that this

particular decision to transfer Manuel was within the scope of Manuel's or Mullen's authority

or that the company authorized either of them to speak for it regarding that decision. It is not

even clear where Manuel or Mullen obtained this information or if the information is at all

accurate. Also, since plaintiff alleges that Webber gave Manuel these oral reports in 1992 or

1993, the reports would not have been contemporaneous with the challenged decision. The

motion to strike is therefore due to be granted as to this statement, although the court notes

that it would probably have little or no impact on the court's analysis of the motion for

summary judgment.

Defendant argues that the following statements should be struck as inadmissible

hearsay:

> The job of Specialist B requires very little typing. Alpha Cottingham from the
> Human Resource [sic] did a clerical assessment in August of 1997 and held a
> meeting about raising the salaries for the people who did the scheduling in the
> plant. In the meeting, they had all the administrative support personnel there,
> all the clerical personnel was [sic] present, P.J. Hester, the assistant plant
> manager was there, and a representative from the Human Resources
> department from Corporate. I was there, too.
>
> In the meeting, the discussion was about what percentage of the work of the

18

Specialist B employees involved scheduling, time sheets and typing. It was determined that Manuel spent 80% of her time scheduling and doing time sheets and 20% doing other things. Scheduling and time sheets involve inputing [sic] data into the computer and printing out the schedules and time sheets. None of this is done on a typewriter.

Everyone talked about what percentage of their work involved which tasks. Most of it was computer work–imputing [sic] and doing calculations, sending out memos. There was very little typing.

(Plaintiff's Second Affidavit, pp 1-2).

Insofar as the passage relates statements of those in the meeting other than plaintiff, the statements are inadmissible hearsay unless they fall under an exception to the hearsay rule. In particular, the statement that "[i]t was determined that Manuel spent 80% of her time scheduling and doing time sheets and 20% doing other things," could be deemed to fall under the Rule 801(D)(2)(d) hearsay exception. Although it is not clear who made the "determination," of how Manuel spent her time, the statement could be interpreted, in the context of the entire passage, to mean that Manuel stated this to be the case during the meeting. Under such an interpretation, the statement would fall under Rule 801(D)(2)(d) because Manuel would have made it within the scope of her employment. The court will treat the statement as non-hearsay in its consideration of the motion for summary judgment.

The court cannot determine whether the statement that "everyone talked about what percentage of their work involved which tasks. . . . [t]here was very little typing" falls under the 801(D)(2)(d) hearsay exception because the identity of "everyone" is not apparent. The motion to strike this statement is therefore due to be granted.

Defendant argues that the following statement should be struck as inadmissible hearsay: "They did a survey in 1997 and 50% or more of the work was scheduling."

(Plaintiff's First Affidavit at 3). Plaintiff appears to be referring to written statements by an unspecified entity concerning survey results on the percentage of time certain workers devoted to their various duties. This entity may have been the defendant or a company working for the defendant, but it is not clear from the statement. It is not even entirely clear that the statement refers to the position plaintiff wanted. The court therefore is unable to determine whether the statement falls under Rule 801(D)(2)(d). The motion to strike the statement as inadmissible hearsay is therefore due to be granted.

## II.     Motion for Summary Judgment

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex,* 477

20

U.S. at 322-23; *see* FED. R. CIV. P. 56(a) and (b).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324. The nonmoving party need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings. *Id.*

After a properly made motion has been properly responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 259; *see Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11

21

(1983). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*. 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### A.    Failure to Promote

#### 1.    Promotion

Defendant initially argues that Manuel was not promoted, that her appointment to the position of Administrative Assistant was a lateral move with no increase in pay, so that the failure to appoint plaintiff to that position was not an adverse employment action upon which plaintiff could base an employment discrimination action under § 1981. Plaintiff alleges in her first affidavit, however, that the Administrative Assistant position to which Manuel was

22

appointed is superior in several ways to her job as Senior General Clerk at the coal scales.

She says that Manuel has more opportunity for advancement, more earnings potential, more

authority, less supervision and more flexible hours. The Eleventh Circuit has held that a "job

is a 'promotion', although it does not represent an immediate increase in pay, if it has better

working conditions or greater long term earnings potential." Carmichael v. Birmingham

Sawworks, 738 F.2d 1126, 1134 (11th Cir. 1984) (citation omitted). The court will therefore

view Manuel's transfer as a promotion.

### 2.    Direct Evidence

Defendant argues that plaintiff cannot meet her initial burden in this case by proving a

prima facie case of race discrimination. Before addressing this argument, the court must

address plaintiff's claim that she has presented direct evidence of defendant's discriminatory

intent.

The Eleventh Circuit recently explained the impact that direct evidence has on an

employment discrimination case. The court stated as follows:

"When there is direct evidence that discrimination was a motivating factor in
the challenged employment decision, the appropriate analysis is different from
that employed in a case where only circumstantial evidence is available."
*Trotter v. Board of Trustees of University of Alabama*, 91 F.3d 1449, 1453
(11th Cir.1996); *Bell v. Birmingham Linen Service*, 715 F.2d 1552, 1556 (11th
Cir.), *cert. denied*, 467 U.S. 1204, 104 S. Ct. 2385, 81 L. Ed. 2d 344 (1984).
The basis for the analysis is that once a plaintiff produces direct evidence of a
discriminatory motive, and the trier of facts accepts this testimony "the
ultimate issue of discrimination is proved." *Bell*, 715 F.2d at 1556. As such,
"the defendant may avoid a finding of liability only by proving by a
preponderance of the evidence that it would have made the same decision even
if it had not taken the [illegitimate criterion] into account." *Price Waterhouse
v. Hopkins*, 490 U.S. 228, 258, 109 S. Ct. 1775, 1795, 104 L.Ed. 2d 268
(1989).

23

*Evans v. McClain of Georgia, Inc.* 131 F.3d 957, 961-62 (11th Cir. 1997).

Plaintiff argues that Mullen's use of racial slurs constitutes direct evidence of the defendant's discriminatory animus in failing to appoint her Administrative Assistant. Although the court has held that these statements are due to be struck as irrelevant due to the lack of evidence that Mullen was a decisionmaker, the court will proceed to analyze why they would not constitute direct evidence in this case.

In her first affidavit, plaintiff alleges that Mullen was her foreman at the time that Manuel was appointed an administrative assistant. According to plaintiff,

> [Mullen] made racial statements. He said things like "this nigger wants to buy my car," "I'm going to shoot this nigger." That was in 1990 and 1991. He bragged to me one time that he slapped his wife and cut off her dress. He said the nigger word all the time, especially when talking to white employees. He said the nigger word all the way to his retirement in 1995. In 1991-92, I reported him to employee concern. After that, he was cold and cruel to me and talked to me in harsh terms.

(Plaintiff's First Affidavit at 3). During her deposition, plaintiff discussed Mullen's use of racial slurs. She could only specifically recall two incidents in which she heard him use such slurs. In one instance, plaintiff states that Mullen used a racial slur while recounting to another employee an incident in which a black person offered to buy the upper portion of Mullen's car. (*Id.* at 110-12). In the other instance, plaintiff states that she overheard Mullen use a racial slur in recounting an incident in which he erroneously believed he was about to be robbed by a black person at a fast-food restaurant. (*Id.* at 116-18). Both of these incidents happened in 1990 or 1991, according to the plaintiff, but she also states that Mullen used racial slurs until his retirement in 1995. (Plaintiff's First Affidavit at 3). Plaintiff's testimony reveals that she never heard Mullen use racial slurs in speaking to any black

24

people, and none of the slurs she recalled him using were related to work. (Plaintiff's Deposition at 122, 109-21).

What constitutes direct evidence is not always clear. Excluded from the definition are "stray remarks in the workplace," "statements by nondecisionmakers," and "statements by decisionmakers unrelated to the decisional process itself." *E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920, 924 (11th Cir. 1990) (quoting *Price Waterhouse*, 109 S. Ct. at 1804 (O'Connor, J., dissenting)). Such statements do not "justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria." *Id.*

Defendant argues that Mullen's remarks fall into one of these excluded categories--that of the non-decisionmaker-- because "there is absolutely no evidence that Mullen participated in the relevant decisional process in any way." (Motion for Summary Judgment at 9). As is set forth above, plaintiff has presented no evidence that Mullen made, influenced or in any way participated in the decision to appoint Manuel. Plaintiff merely speculates that he must have because he was one of her immediate supervisors. Mullen's comments do not constitute direct evidence because there is no evidence that he was a decisionmaker.

Mullen's remarks fail to qualify as direct evidence on another basis as well: they fall into the realm of "stray remarks" or remarks "unrelated to the decisional process itself." *Alton Packaging*, 901 F.2d at 924. In *Merrit v. Dillard Paper Co.,* 120 F.3d 1181 (11th Cir. 1997), the Eleventh Circuit composed the following list of cases in which it decided whether certain remarks constituted direct evidence:

> We have defined direct evidence as "evidence, which if believed, proves existence of fact in issue without inference or presumption." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n. 6 (11th Cir.1987) (citation, emphasis

25

and brackets omitted). Evidence that only suggests discrimination, *see Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1081-82 (11th Cir.1990), or that is subject to more than one interpretation, *see Harris v. Shelby County Bd. of Educ.*, 99 F.3d 1078, 1083 n. 2 (11th Cir.1996), does not constitute direct evidence. In a long line of cases, this Court has found direct evidence where "actions or statements of an employer reflect[ ] a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Caban-Wheeler v. Elsea*, 904 F.2d 1549, 1555 (11th Cir.1990). *See Haynes v. W.C. Caye & Co., Inc.*, 52 F.3d 928, 930 (11th Cir.1995) (holding that statement questioning whether "sweet little old lady could get tough enough" to do job and statement that "a woman was not competent enough to do this job" constitute direct evidence); *Burns v. Gadsden State Community College*, 908 F.2d 1512, 1518 (11th Cir.1990) (holding that statement that "no woman would be named to a B scheduled job" constitutes direct evidence); *Caban-Wheeler*, 904 F.2d at 1555 (holding that defendant's statement that program needed a black director constitutes direct evidence); *E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920, 923 (11th Cir.1990) (holding that general manager's statement that "if it was his company, he wouldn't hire any black people" and production manager's statement that "you people can't do a ---- thing right" constitute direct evidence); *E.E.O.C. v. Beverage Canners, Inc.*, 897 F.2d 1067, 1068 n. 3, 1072 (11th Cir.1990) (holding that plant manager's constant barrage of racial slurs and statements such as "[t]hose niggers out there will not get anywhere in this company" constitute direct evidence); *Sennello v. Reserve Life Ins. Co.*, 872 F.2d 393, 394, 395 (11th Cir.1989) (holding that statement that "we can't have women in management" constitutes direct evidence); *Walters v. City of Atlanta*, 803 F.2d 1135, 1141-42 (11th Cir.1986) (holding that memorandum requesting a new list of candidates because "current register ... does not include any minority group representation" constitutes direct evidence); *Wilson v. City of Aliceville*, 779 F.2d 631, 633, 636 (11th Cir.1986) (holding that mayor's statement that "he wasn't gonna let no Federal government make him hire no god-dam nigger" constitutes direct evidence); *Thompkins v. Morris Brown College*, 752 F.2d 558, 561, 563 (11th Cir.1985) (holding that college president's statement that he saw no reason for a woman to have a second job and statement that males had families and needs that female plaintiff did not [sic] constitute direct evidence); *Miles v. M.N.C. Corp.*, 750 F.2d 867, 874-75 (11th Cir.1985) (holding that plant manager's statement that he wouldn't hire blacks because "[h]alf of them weren't worth a shit" constitutes direct evidence); *Bell v. Birmingham Linen Serv.*, 715 F.2d 1552, 1553, 1557 (11th Cir.1983) (holding that supervisor's statement that he would not put woman in washerman position because "every woman in the plant would want to go into the washroom" constitutes direct evidence); *but see Harris*, 99 F.3d at 1082, 1083 n. 2 (holding that statement that "under the circumstances we did not

26

> need to employ a black at Thompson High School" open to more than one
> interpretation and thus not direct evidence).  As we have explained in the age
> discrimination context, the quintessential example of direct evidence would be
> "a management memorandum saying, 'Fire Earley--he is too old.' "  *Earley*,
> 907 F.2d at 1081; *see also, e.g., Rollins v. TechSouth, Inc.*, 833 F.2d 1525,
> 1528 n. 6 (11th Cir.1987) (giving virtually identical example).

*Merrit v. Dillard Paper Co.,* 120 F.3d 1181, 1189-90 (11th Cir. 1997).

In *Evans v. McClain of Georgia, Inc.*, 131 F.3d 957 (11th Cir. 1997), the court found

that a decisionmaker's testimony that appellant "intimidated white employees by his 'strut,'

that he was "a very large, very strong, very muscular black man," and that he tried to

intimidate "three smaller or overweight white men" were distinguishable from the general

racially discriminatory comments found to be direct evidence in *Alton Packaging* because

they were "narrowly tailored to a specific event." *Evans*, 131 F.3d at 962 (citing *Burrell v.

Board of Trustees of Georgia Military College*, 125 F.3d 1390, 1393 (11th Cir. 1997)).

In this case, there is no evidence that Mullen's remarks referred to any of defendant's

employees or to the employment relationship between defendant and any of its employees.

Rather, those remarks plaintiff specifically recalls focus exclusively on incidents that

happened away from work and which did not involve defendant's employees. The remarks

plaintiff describes seem more akin to those in *Evans*, where the remarks were not found to

constitute direct evidence, than those in the cases where the remarks were found to constitute

direct evidence. Mullen's remarks would not constitute direct evidence of defendant's

discriminatory animus in appointing Manuel as Administrative Assistant. The court must

therefore analyze plaintiff's claim under the *McDonnell Douglas* standard applicable to cases

in which only circumstantial evidence is available.

27

### 3.   The McDonnell Douglas Standard

Under the *McDonnell Douglas* standard, the plaintiff has the initial burden of

establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411

U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973); *Texas Department of*

*Community Affairs v. Burdine*, 450 U.S. 248, 253-54 & n. 6, 101 S. Ct. 1089, 1094 & n. 6,

67 L. Ed. 2d 207 & n.6; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th

Cir.1997), *cert. denied*, --- U.S. ----, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1997). Once the

plaintiff establishes a prima facie case, a legal presumption of unlawful discrimination arises

and the burden shifts to the defendant employer to articulate a legitimate, nondiscriminatory

reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802;

*Burdine*, 450 U.S. at 254; *Combs*, 106 F.3d at 1528. "To satisfy that burden of production,

'[t]he defendant need not persuade the court that it was actually motivated by the proffered

reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to

whether it discriminated against the plaintiff.'" *Combs*, 106 F.3d at 1528 (quoting *Burdine*,

450 U.S. at 254-55, 101 S. Ct at 1094).

Once the employer meets its burden of production, "[t]he presumption, having

fulfilled its role of forcing the defendant to come forward with some response, simply drops

out of the picture, " *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510-11, 113 S. Ct.

2742, 2749, 125 L. Ed. 2d 407 (1993); *see also Burdine*, 450 U.S. at 255 & n. 10, leaving

the elements of the prima facie case. *Combs*, 106 F.3d at 1528. When those elements are

accompanied by evidence of pretext or disbelief of the defendant's proffered explanation,

28

they may permit, in some instances, a finding for the plaintiff. *Id.* at 1529; *see also Hicks*, 509 U.S. at 511, *Evans*, 131 F.3d at 963. The plaintiff, however, always retains the ultimate burden of proving that he was the victim of intentional discrimination. *Hicks*, 509 U.S. at 508; *Burdine*, 450 U.S. at 253.

The Eleventh Circuit has described the initial burden of a plaintiff in an failure-to-promote employment discrimination case as follows:

> [t]o establish a prima facie case of discrimination in promotion a plaintiff must prove: (1) she is a member of a protected minority; (2) she was qualified for and applied for the promotion; (3) she was rejected despite those qualifications; and (4) other equally or less qualified employees who were not members of the protected minority were promoted.

*Wu v. Thomas*, 847 F.2d 1480, 1483 (11th Cir. 1988), *cert. denied*, 490 U.S. 1006 (1989).

Plaintiff is a member of a protected minority and she was not chosen for the Administrative Assistant job to which Manuel was appointed, so she meets the first and third factors. Defendant argues that plaintiff has not met the burden of proving her prima facie case because she fails to meet factors two and four. Defendant argues that plaintiff has not shown that she was qualified for the job or that her qualifications were equal to or exceeded Manuel's.[13] Defendant argues that at least fifty percent of the duties of the Administrative Assistant position at issue involve typing and that plaintiff's failure of two typing tests (one in 1985 and one in 1986) indicates that she was clearly less qualified for the position than was

---

[13]There appears to be no dispute that plaintiff "applied" for the job for the purposes of the *McDonnell Douglas* test. Although the job was not posted, Freeman stated in his affidavit that plaintiff was considered, along with all of the remaining Senior General Clerks. Plaintiff also testified that she told her superiors that she wanted a promotion.

Manuel, who passed the typing test in 1986.[14]

As plaintiff's qualifications or her lack thereof form the basis of defendant's articulated legitimate, nondiscriminatory reason for not promoting plaintiff, the court will assume for the purposes of this motion that plaintiff has established her prima facie case and will examine plaintiff's qualifications in the pretext analysis. Defendant meets its burden to articulate a legitimate, nondiscriminatory reason for its action, since it has presented evidence that it judged the plaintiff to be less qualified than Manuel because she twice failed the same typing test that Manuel had passed.

As defendant has met its burden, the plaintiff now "must show by a preponderance of the evidence that the defendant's proffered explanation was a pretext for discrimination." *Arrington v. Cobb County*, 139 F.3d 865, 873 (11th Cir. 1998) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981)). Plaintiff asserts several arguments that defendant's asserted legitimate, non-discriminatory reasons are pretextual.

Plaintiff first challenges defendant's assertions that Manuel's Administrative Assistant position actually required a substantial amount of typing.[15] In her affidavits, plaintiff states

---

[14]Manuel stated that more than half of her work involves keying or typing in information, and that typing speed and accuracy are essential in performing the job. (Manuel Affidavit).

[15]In her first affidavit, plaintiff states that typing is not listed as a qualification for the job. (Plaintiff's First Affidavit at 2). What *is* listed as a qualification, however, is "[t]horough knowledge of OA [office automation] and/or PC Operation and Application Software." (Couch's Deposition at 49). This software includes a word processor, systems for payroll and accounting and a check-writing system, which require typing or "keying in" information on a keyboard. (*Id.* at 50-52). A former administrative supervisor for defendant

30

that she has observed that the Administrative Assistants do very little typing.[16] (Plaintiff's First Affidavit at 3). She also states that in one meeting, defendant employees discussed the time spent on scheduling. In that meeting, she states that "[i]t was determined that Manuel spend 80% of her time scheduling and doing time sheets and 20% doing other things. Scheduling and time sheets involve inputing [sic] data into the computer and printing out the schdules and time sheets. None of this is done on a typewriter." (Plaintiff's Second Affidavit at 2). This passage reveals that plaintiff does not view work on a computer keyboard as "typing," or that computer keyboard proficiency could be accurately measured by a typing test taken on a typewriter. Her argument thus appears to be that defendant's alleged reliance on such a typing test in choosing Manuel is so implausible that it constitutes pretext.

"[A] plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where, as here, the reason is one that might motivate a reasonable employer." *Tidwell v. Carter Products*, 135 F.3d 1422, 1427 (11th Cir. 1998) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir.1997), *cert. denied,* — U.S. —, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998). Here, plaintiff has offered little argument or evidence that the typing test results were not the the actual reason that defendant failed to promote her. She merely questions the wisdom of

---

testified that this requirement subsumes computer keyboard skills. (Couch's Deposition at 48-52).

[16]As set forth above, plaintiff's testimony that several unidentified Administrative Assistants told her that they do little typing is due to be struck as hearsay evidence. That testimony would not affect the court's conclusions on the issue of pretext, however.

using such tests as a qualification for the job she wanted. It is entirely conceivable, however, that the failure of a typing test given on a typewriter would motivate a reasonable employer to doubt that a candidate had adequate typing skills to perform a job requiring computer keyboard skills. Also, even though nine years had elapsed since plaintiff's last test, as she points out, it was the second test in a row she had failed, and Manuel's last test had been nine years earlier as well.[17] There is no evidence that defendant was aware of any significant change in plaintiff's or Manuel's typing skills that should have notified it that new testing was needed. The court is unwilling to find that, under the circumstances, a reasonable employer would not be motivated by a typing test taken nine years before.[18]

Plaintiff next argues that the tests were not accurately graded and that her performance should have earned a passing score.[19] She argues that her performance on the

---

[17]The court notes that plaintiff's score worsened substantially on the second test. On her 1985 test, she had 18 points subtracted, thereby failing the test by six points; on her 1986 test, she had 26 points subtracted, thereby failing the test by 14 points. (Plaintiff's Evidentiary Submission in Opposition to Defendant's Motion for Summary Judgment at Exhibit 6).

[18]Plaintiff states that her typing has improved since she took the typing tests. (Plaintiff's First Affidavit at 2; Plaintiff's Second Affidavit at 1). She implies that she would have passed a typing test in 1995, if she had known it was necessary to get the job. The evidence reflects that plaintiff could have retaken the test, but that she simply assumed she had passed the last test she took because one personnel employee told her she passed and another told her that she had failed. (Couch's Deposition at 21-22; Plaintiff's Deposition at 69). She thus ignored information that she had failed the test and that she did not attempt to retake it. Although plaintiff says she did not know she needed to pass the typing test to get the job, she knew the job required good keyboard skills. She has not alleged, and there is no evidence that defendant illegally discriminated in the process of informing its employees about job requirements.

[19]Plaintiff insinuates that defendant racially discriminated in its administration or grading of typing tests, but the court has found no evidence in the record supporting such an insinuation.

32

test was actually similar to that of Manuel. The tests included in the record do not appear to support such a contention. Even assuming that they did, plaintiff has not shown that anyone who made, participated in or influenced the decision was or should have been aware of this, or that such persons ever reviewed or evaluated the test documents she and Manuel completed. The evidence shows that the decisionmakers simply relied upon the recorded test results.

Plaintiff further complains that the typing test is subjective, although she does not present a claim based directly upon discriminatory testing or grading practices. The court has reviewed the typing tests submitted by plaintiff. It is apparent that the graders of plaintiff's typing tests primarily penalized her for omitted or misspelled words as well as skipped blanks. Spotting and penalizing such errors calls for little discretion on the part of the evaluator.[20] The test does not appear to be highly subjective. Also, plaintiff's allegations that her test was graded unfairly in comparison with Manuel's appears to be without basis. Even if there were a basis to plaintiff's complaints about the test, this would be of little relevance, as there is no evidence that the decisionmakers knew or should have known that there was any problem with the test or with the manner in which plaintiff's test was graded.

Plaintiff makes other arguments in her attempt to establish pretext. She asserts that the alleged decisionmaker, Freeman, told her that Stovall made the decision. (Plaintiff's First

---

[20]It is also apparent, regardless of the plaintiff's protestations, that many, if not most, of the errors noted on her typing tests would arguably demonstrate whether or not she could type accurately on a computer keyboard.

33

Affidavit at 2-3).  The court has found that this statement is due to be struck as sham affidavit testimony disallowed under *Van T. Junkins and Associates v. U.S. Industries*, 736 F.2d 656, 658-59 (11th Cir.1984), but even if the court considered the statement, it would not assist plaintiff in her efforts to prove pretext.  Plaintiff testified that plant manager Bob Norman told her that, in connection with the decision at issue, Stovall made negative comments about her because she left a temporary work assignment under his supervision after she became dissatisfied with the training she received in it.  Even assuming that Stovall's negative comments affected the decision to promote Manuel instead of plaintiff, that would not be evidence of defendant's discriminatory animus or that its asserted legitimate, nondiscriminatory reason is pretextual, only that Stovall believed that plaintiff did not handle the temporary work assignment appropriately and that his opinions were considered in the decision-making process.

Plaintiff points to Mullen's racist statements, but as set forth above, there is no evidence that he played any role in the decision, so his statements do not serve as evidence of the defendant's discriminatory animus in failing to choose plaintiff for the position.  Plaintiff also argues, based upon her affidavits and deposition testimony, that all the other Administrative Assistant positions were given in order of seniority to white people, except in her case, when she was passed over in favor of a white person.  The court has ruled that plaintiff's statements about the jobs being given in order of seniority are either not probative, or are due to be struck as hearsay or sham affidavit statements disallowed under *Van T.*

34

*Junkins and Associates v. U.S. Industries*, 736 F.2d 656, 658-59 (11th Cir.1984).[21] There is no evidence properly before the court that, but for plaintiff, the Administrative Assistant positions were granted in order of seniority.

Plaintiff also argues that she was much more qualified than Manuel. She points out that she has a college degree and a law degree whereas Manuel has little schooling beyond the high school level. There is no evidence, however, that the plaintiff's post-secondary education makes her more qualified than Manuel for this particular position. Plaintiff further states that she has received good evaluations and is otherwise highly qualified for the position, but it is the employer's perceptions about a candidate's qualifications for a job that are relevant, not the candidate's own perceptions. As the Eleventh Circuit has stated, "[t]he inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance." *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997) (citations omitted).

As in *Combs*, plaintiff has "failed to produce evidence sufficient to permit a reasonable factfinder to disbelieve [defendant's] proffered nondiscriminatory explanation that it promoted [Manuel] instead of [plaintiff] because [Manuel] had superior [typing skills as reflected by her success on the typing test]." *Combs*, 106 F.3d at 1543. Thus, under the

---

[21] As is set forth above, plaintiff's deposition testimony reflected that she was not certain about the seniority of all those who became Administrative Assistants before Manuel. In addition, she has submitted no evidence about their seniority relative to each other or whether that seniority matched the order in which they became Administrative Assistants. Plaintiff asserted in her affidavit that "management" told her that the positions were being given according to seniority, but the court has found that those assertions are due to be struck as inadmissible hearsay and as sham affidavit statements disallowed by *Van T. Junkins and Associates v. U.S. Industries*, 736 F.2d 656, 658-59 (11th Cir.1984).

35

*McDonnell Douglas* analysis, plaintiff's claim fails because she cannot prove that the defendant's asserted legitimate, nondiscriminatory reason was merely a pretext for illegal discrimination.

## B.   Racially Hostile Work Environment

The complaint includes a claim that the plaintiff was injured by a racially hostile work environment, but the parties have focused on the promotion claim to the virtual exclusion of the hostile environment claim.  In support of the hostile work environment claim, plaintiff alleges that one of her immediate supervisors, John Mullen, used racial slurs "all the time," but recalls only two instances in which he did, in relating two non-work incidents to other employees.[22]  She complains that, in 1989 or 1990, Mullen grabbed her clothing, blocked her way and growled at her, causing one of her other supervisors to call out "whoa." (Plaintiff Deposition at 127-130).  She complains that Mullen put her down and questioned the academic excellence of her college.  (Id. at 124-25).  She states that Mullen once grabbed her meal tickets and threw them on the floor.  She attributes the fact that Manuel was promoted ahead of her to racial discrimination and points to Mullen's racial slurs as evidence of this.  As thus supported, plaintiff's hostile environment claim would not survive the motion for summary judgment.

In outlining the law of hostile work environment harassment, the court in Smith v. Beverly Health and Rehabilitation Services, Inc., 978 F. Supp. 1116, 1120-21 (N.D. Ga. 1997) stated as follows:

_____

[22]The court notes that the plaintiff had several immediate supervisors, including Mullen, Ray Sunberg, Pete Peterson and Mona Tierce.  (Plaintiff's Deposition at 29).

36

To state a claim for hostile work environment harassment, Plaintiff must show that he was subject to a workplace "permeated with 'discriminatory intimidation, ridicule, and insult.'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 371, 126 L. Ed. 2d 295 (1993) (quoting Meritor Sav. Bank v. Vinson, 477 U.S. 57, 65, 106 S. Ct. 2399, 2404-05, 91 L. Ed. 2d 49 (1986)); Edwards v. Wallace Community College, 49 F.3d 1517, 1521 (11th Cir. 1995). Plaintiff must show that the discriminatory atmosphere was "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." Harris, 510 U.S. at 23, 114 S. Ct. at 371 (quoting Meritor, 477 U.S. at 67, 106 S. Ct. at 2405); Edwards, 49 F.3d at 1521.

It is not sufficient that Plaintiff merely highlight a couple of utterances of racial epithets as evidence of a hostile work environment. See Harris, 510 U.S. at 21, 114 S. Ct. at 370 ("As we pointed out in Meritor, mere utterance of an ... epithet which engenders offensive feelings in a employee does not sufficiently affect the conditions of employment to implicate Title VII." (internal quotation marks omitted)). Racial slurs must be "so common place, overt and denigrating that they created an atmosphere charged with racial hostility." Edwards, 49 F.3d at 1521 (quoting EEOC v. Beverage Canners, Inc., 897 F.2d 1067, 1068 (11th Cir. 1990)). [Footnote omitted.].

In Harris, the Supreme Court enunciated four factors to be considered in determining whether a plaintiff establishes a prima facie case of a hostile work environment: (1) the frequency of the discriminatory conduct; (2) the severity of the discriminatory conduct; (3) whether the discriminatory conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the discriminatory conduct unreasonably interferes with an employee's work performance. Harris, 510 U.S. at 23, 114 S. Ct. at 371.

If the plaintiff establishes a prima facie case, the plaintiff then must show that the employer is liable for the hostile working environment. The plaintiff must show that the employer "knew or should have known of the harassment and failed to take prompt reasonable action against the [harassing employee]." Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1316, reh'g. denied, 874 F.2d 821 (11th Cir. 1989); Henson v. City of Dundee, 682 F.2d 897 (11th Cir. 1982); Lewis v. Zilog, Inc., 908 F. Supp. 931, 957 (N.D. Ga. 1995), aff'd, 87 F.3d 1331 (11th Cir. 1996).[23]

---

[23]The defendant's knowledge is presumably not at issue, since the plaintiff alleges that she reported Mullen's racial slurs to defendant's "employee concern" office and because she

To determine whether Defendant is entitled to summary judgment on Plaintiff's claims, the Court must apply these principles to the facts discerned from the evidence in this record. In viewing the evidence, the Court avoids making credibility determinations and views the evidence in the light most favorable to Plaintiff.

Smith, 978 F. Supp. at 1120-21.

Under these principles, the record evidence does not support a hostile work environment claim. Mullen's racial slurs, though odious and offensive, were not directed at the plaintiff or at any of the defendant's employees, and the plaintiff could not recall more than two specific instances in which he uttered them. This does not show that racial discrimination polluted and permeated the plaintiff's workplace. Also, as stated in the direct evidence discussion above, the plaintiff has also failed to show that Mullen's slurs were related to Manuel's promotion, because there is no evidence that Mullen was a decisionmaker.

The incident in which Mullen grabbed the plaintiff's clothes and growled at her is a troubling instance of aggression, but there is no evidence that Mullen's behavior in that instance was racially motivated; rather, plaintiff stated that Mullen's behavior was a reaction to her comment that he needed some coffee. Mullen apparently interpreted this as an insult and told her not to "speak ill" of him. (Plaintiff's Deposition at 129). There is likewise no evidence that Mullen was racially motivated to grab plaintiff's meal tickets and throw them on the floor. The record does not in any way reflect the context or circumstances of this incident.

---

alleges that several of her immediate supervisors observed the incident in which Mullen grabbed her clothing and growled at her.

38

Similarly, there is no evidence that the alleged derision with which Mullen treated the

plaintiff and questioned the quality of her college was racially motivated. In fact, the

plaintiff's testimony indicates that Mullen's derision may have been the product of sexism:

Q:    No. Okay. You said John Mullen held you back by putting you down
      to other people on a regular basis. What do you mean by that?

A:    Well, he would say things like – he knew I went to Miles College.
      And he was saying that he heard that he heard that it wasn't a good
      school.[24]  And I know he didn't speak positive of me.

Q:    Were you finished?

A:    Yes.

Q:    You said he didn't speak positively of you?

A:    No.

Q:    How do you know?

A:    Just in our conversation – my conversation with him, I was under the
      impression he felt like I should be at home rather than working and that
      a woman's place was at home.

Q:    Did he tell you that?

Q:    He had said it in so many words about other things that were said like
      giving scenarios about his wife and how he told her – how she left and
      went out one day somewhere and she came back home and he locked
      her out of the house and said they had two boys and that she had no
      business out there and that she couldn't work as long as his boys were
      in school.

Q:    So based on his attitude about his wife working, you took that to mean
      he didn't think any women should work?

_____

[24]The court notes that the student population of Miles College is predominantly black,
although the evidence does not reflect whether Mullen knew this or, assuming that he did,
whether such knowledge was the basis for his information that it was not a good school.

A:    Well, I talked to other employees, female employees, and he had pretty much done them the same way as far as, you know, letting them know that the workplace was no place for women.

(Plaintiff's Deposition at 124-126). As the plaintiff has not asserted any claims based upon sex discrimination, Mullen's sexist comments and beliefs are irrelevant to this action.

Applying the factors set forth in Harris, the court finds that the plaintiff has not established a prima facie case of a racially hostile work environment. The alleged discriminatory conduct is apparently limited to Mullen's use of racial slurs on two specific occasions (and possibly on other occasions as well, although the plaintiff recalled only two), his derisive attitude toward the plaintiff, the incident in which he grabbed her clothes and growled at her and the incident in which he grabbed her meal tickets and threw them on the floor. The discriminatory conduct was not frequent or severe and there is no indication that it unreasonably interfered with the plaintiff's work performance. Although the incidents in which Mullen grabbed the plaintiff's clothing and in which he grabbed her meal tickets and threw them on the floor were, to some extent, physically threatening or humiliating, they were apparently isolated incidents and there is no indication that they were racially motivated. In addition, the plaintiff admitted that one of her other supervisors verbally protested when Mullen grabbed her clothing. The court further notes that plaintiff's own testimony indicates that Mullen's conduct and his derisive attitude toward her may have been at least partially motivated by sexism, which is not relevant to any claim asserted in this case. The plaintiff has not established a prima facie case that she was subjected to a racially hostile work enviornment.

40

## CONCLUSION

Plaintiff's evidence raises no genuine issue of material fact regarding her claims of racial discrimination. Accordingly, defendants' motion for summary judgment with respect to all of plaintiff's claims is due to be granted. As set forth above, the court also finds that defendant's Motion to Strike is due to be granted in part and denied in part. An order consistent with the findings reflected in this Memorandum Opinion will be entered contemporaneously herewith.

The Clerk is **DIRECTED** to serve a copy of this Memorandum Opinion upon counsel for the parties.

**DONE** this 9th day of September, 1998.

**JOHN E. OTT**
United States Magistrate Judge